RICHARD L. CULLER
v.
WILLIAM T. ADCOCK AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
No. 2008 CA 2243.
Court of Appeals of Louisiana, First Circuit
June 19, 2009.
Not Designated for Publication
WILLIAM BRADLEY, ATTORNEY FOR Plaintiff-Appellant, Richard L. Culler.
JOHN T. ROETHELE Attorney for Defendants-Appellees William T. Adcock and State Farm Mutual Automobile Insurance Company
Before: PARRO, McCLENDON, AND WELCH, JJ.
WELCH, J.
In this action for damages arising out of a motor vehicle accident, the plaintiff, Richard L. Culler, appeals a judgment rendered in favor of the defendants, William T. Adcock and State Farm Mutual Automobile Insurance Company, which dismissed the plaintiffs claims against the defendants. We affirm in accordance with Uniform RulesCourts of Appeal, Rule 2-16.1(B).
On October 23, 2004, the plaintiff, while operating a motorcycle, was involved in an accident with Adcock, who was operating a pickup truck on Lower Rome Road[1] just south of its intersection with the Highway 22 service road ("the service road"). The plaintiff had been traveling northbound on Lower Rome Road, while the defendant and his guest passenger, James Larry Cobb, who had just turned from the service road onto the Lower Rome Road, were traveling southbound. No law enforcement agency or ambulance was called to the scene of the accident. On January 31, 2005, the plaintiff filed a petition for damages against Adcock and his insurer, State Farm Mutual Automobile Insurance Company, and the defendants answered, generally denying the allegations of the plaintiff.
Essentially, the parties dispute who crossed the center line of Lower Rome Road and traveled into the opposite lane of travel, thereby causing the collision. After a bench trial on April 22, 2008, the trial court took the matter under advisement. On May 7, 2008, the trial court rendered and signed a judgment in favor of the defendants and dismissed the plaintiffs claims. In written reasons for judgment, also signed on May 7, 2008, the trial court noted that no testimony was offered by any expert in accident reconstruction and that "the matter was submitted to the [c]ourt on the basis of the conflicting testimony of the parties, photographs of the scene taken by Plaintiffs son the day after the accident, and a paucity of other objective evidence pertaining to the accident." From the May 7, 2008 judgment, the plaintiff has appealed, contending that the trial court's factual findings were manifestly erroneous and the judgment should be reversed.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). The supreme court has announced a two-part test for the reversal of the fact finder's determinations: (1) the appellate court must find from the record that a reasonable basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong. Stobart v. State, DOTD, 617 So.2d 880, 882 (La. 1993); see also Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Thus, the first issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart, 617 So.2d at 882. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Rosell, 549 So.2d at 844. Thus, where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, 549 So.2d at 844.
In this case, the trial court was presented with two permissible views concerning how the accident occurred and in whose lane of travel it occurred. The written reasons assigned by the trial court fully and accurately describe the underlying facts, the evidence presented at trial, the applicable burden of proof, the court's analysis of those facts, and the court's conclusions based on those facts. After a thorough review of the record, we find the factual findings made by the trial court in its reasons for judgment are fully supported by the evidence presented at trial, and in our review of the entire record, we find no manifest error in those findings. Therefore, we attach and adopt those written reasons as part of this opinion and affirm the May 7, 2008 judgment of the trial court.
All costs of this appeal are assessed to the plaintiff/appellant, Richard L. Culler.
AFFIRMED.
REASONS FOR JUDGMENT
This is a suit for personal injuries resulting from a collision between a Harley-Davidson motorcycle operated by Plaintiff and a Chevrolet 3/4 ton pickup truck operated by Defendant. The accident occurred at approximately 10:30 A.M. on a Saturday morning, October 23, 2004.
Following the collision, Plaintiff apparently was disinclined to have police officers summoned to the scene, nor to have an ambulance summoned or to be transported to a local hospital for treatment, all as offered by Defendant. At the same time Defendant, an attorney, also determined not to call in law enforcement to investigate, as a result of which there was no accident investigation evidence presented. Further, no testimony was offered by any expert in accident reconstruction. Therefore, the matter was submitted to the Court on the basis of the conflicting testimony of the parties, photographs of the scene taken by Plaintiffs son the day after the accident, and a paucity of other objective evidence pertaining to the accident.
The accident occurred on Lower Rome's Ferry Road, just South of its intersection with a road referred to by all parties as the Highway 22 service road, which runs generally East and West. Plaintiff, who lives further South on Lower Rome's Ferry Road, was proceeding Northbound on his motorcycle. In this direction, there is a blind curve to his right, followed by a fairly short straight stretch of road, before a "T" intersection with the Highway 22 service road. While there was apparently no stop sign at this intersection on the date of the accident, both parties were familiar with the road, and knew that traffic on Lower Rome's Ferry Road would be required to stop and yield to traffic on the Highway 22 service road..
Defendant and a guest passenger had gone to a hardware store in Springfield, Louisiana, and were returning to the guest passenger's camp. Defendant had been proceeding generally Eastbound on the Highway 22 service road, and had turned right, or South, onto Lower Rome's Ferry Road. The testimony and photographs indicated that this was a rather sharp turn, at an angle somewhat exceeding 90 degrees. Plaintiffs son stated that it was fairly well known in the area that vehicles turning in this direction were likely to encroach over into the oncoming, Northbound lane of Lower Rome's Ferry Road.
Plaintiff testified that he had traversed the blind curve and that as he came out of the curve, he was confronted by Defendant's truck, which he stated was completely in his lane of travel. He stated that he "layed down" his motorcycle, and slid into the front bumper or front end of Defendant's truck, in a position of collision which was somewhat in dispute. Plaintiff stated that there was nothing he could have done to avoid the accident.
Both Defendant and his guest passenger testified that the accident occurred further South on Lower Rome's Ferry Road. Their testimony was that Plaintiff rounded the curve at a speed which exceeded that which would enable him to stay in his lane of traffic. Defendant testified that he observed Plaintiff "lay down" his motorcycle onto the pavement, and that the motorcycle collided with the pickup truck on the driver's side.
Our law requires that a Plaintiff prove his case by the standard of a preponderance of the evidence  that is, that his contentions are more probable than not. In this case, the Court cannot conclude that Plaintiff has achieved this standard. The most significant issue in this regard, in the opinion of the Court, is the area of physical damage to Defendant's truck. While not initially observed at the scene, Defendant and his guest passenger shortly thereafter observed that the truck had been damaged on the bottom of the rear door of the extended cab, bed, and wheel on the driver's side of the vehicle. This area of damage was confirmed by the invoice for repairs to his truck introduced by Defendant, which invoice confirmed that the damage was to this particular area of his truck.
As stated, there was no guidance provided by any accident reconstructionist in this case. However, common sense would indicate that if the accident had occurred as described by Plaintiff, there would likely have been damage to the front of Defendant's truck. There was none. Rather, the physical damage to the rear side of the truck would have been more likely to have occurred due to a lateral as opposed to frontal collision, consistent with the testimony of Defendant and his passenger, as to Plaintiffs losing control and straying across the oncoming land, as he rounded the curve.
Plaintiffs counsel addressed questions attempting to establish that the initial contact with the motorcycle might have been from the front of Defendant's vehicle, which would then have rolled over the motorcycle, causing it to bounce up from the roadway causing the damages to the underside of the truck. However, in a truck with a length of 21 feet per the testimony of Defendant, one would have expected the "bounce" and underside damage to have occurred at a point further to the front of the vehicle. Since this was not the case, it is certainly a plausible alternative theory that the lateral damage was the result of Plaintiff's loss of control in rounding the curve, as opposed to Plaintiff's account that Defendant's truck was totally in Plaintiffs lane of travel, which, on the straight path of roadway on which Plaintiff stated the accident occurred, would have seemed to have probably resulted in some physical damage to the front end of Defendant's truck.
Plaintiff further contends that the photographs entered into evidence show skid and gouge marks which indicate that the point of collision was in Plaintiffs lane of travel. In the first place, given the nature of the evidence, or lack thereof, these markings are not totally reliable. However, even accepting that they were caused by this accident, they could also be deemed consistent with Defendant's version of the collision, as they would have been further North or up the road from the point of collision and could have been created by the sliding of the motorcycle after it caromed off the truck after the impact.
An absolutely certain determination of fault in this incident is therefore virtually impossible. As stated, it would certainly have been of some assistance to the Court had law enforcement personnel been summoned to the scene, which deficit is probably attributable to the actions or inactions of both Plaintiff and Defendant. However, Plaintiff bears the burden of proof, and, under the facts presented, this Court cannot conclude that Plaintiff has met this burden by a preponderance of the evidence. Accordingly, the Court will render judgment in favor of Defendants.
NOTES
[1] In the record, this road is also referred to as Lower Rome's Ferry Road and Rome Road. However, for consistency, we refer to it as Lower Rome Road.